I once again dissent from the majority decision in this case. In a per curiam decision of the North Carolina Supreme Court, the Supreme Court adopted the dissenting opinion and reversed the majority decision of the North Carolina Court of Appeals, which affirmed the majority decision of the Full Commission in the instant case. Cherney v. North CarolinaZoological Park, 166 N. C. App. 684, 603 S.E.2d 842 (2004), rev'dby 359 N.C. 419, 613 S.E.2d 498 (2005).
In response to the decision of the Supreme Court, the majority merely added language to its prior Decision and Order to include the "staff" of the Curator of Horticulture, Ms. Wall. The inserting of language to the prior Decision and Order to name staff as well as Ms. Wall does not cure the errors discussed in the dissenting opinion of the Court of Appeals Judge which was adopted by the Supreme Court. Now, without further analysis of the evidence, the majority has found and concluded that plaintiff failed to prove that neither Ms. Wall nor her staff breached any applicable standard of care; therefore, plaintiff failed to prove negligence and is not entitled to recovery under the Tort Claims Act. I disagree.
In Nelson v. Freeland, 349 N.C. 615, 507 S.E.2d 882 (1998), the Supreme Court abolished any distinction between a licensee and an invitee and the different duties of care owed to each by the proprietor of the premises where the injury occurred. In Nelson, it was determined that regardless of the status of the injured person (with the exception of trespassers), the proprietor of the property in a claim for negligence owes a "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." Id. *Page 11 
On 18 July 1998, plaintiff was a lawful visitor of the North Carolina Zoological Park in Asheboro, North Carolina. Plaintiff was inside the African Pavilion when she was struck by a tree (Traveler's Tree), which broke off and fell after being hit by a falling ficus benjamina tree. Plaintiff sustained multiple injuries including a severely broken hip and dislocated femur, several broken ribs, and compression fractures to three vertebrae in her spine.
As the Curator of Horticulture, Ms. Wall was responsible for "any plant-related thing at the zoo," including deciding what plants would be planted in the African Pavilion, selecting the plants and determining how large they would be permitted to grow, the care of and inspection of the roots of the ficus tree that fell, pruning the ficus tree or bracing it from falling, and determining any special safety precautions for large trees like the ficus in an indoor environment such as the African Pavilion. In those instances where Ms. Wall did not personally attend to the specific jobs mentioned, she was responsible for overseeing the work and the supervision of those actually performing the tasks.
The ficus tree which fell on 18 July 1998 had been transplanted to the African Pavilion, an artificial environment, by the employees at the North Carolina Zoological Park in 1984, and it had been in the park's care, custody and control continuously since that time. Theficus tree had previously fallen down on 27 June 1988. At all relevant times the North Carolina Zoological Park through its agent, Ms. Wall, and her staff knew it had fallen. At the time of the first fall, theficus tree was between 16 and 20 feet tall.
After the ficus tree fell on 27 June 1988, it was set back up and cabled by the employees of North Carolina Zoological Park. There were six, seven-strand cables, 3/8" thick, going in four directions. The cables were placed to assist the tree in standing upright and to monitor it to see if it was moving or shifting. The cables were checked for slack/tension and deterioration on a monthly basis, and were last checked on 17 July 1998. According to an incident report that was *Page 12 
prepared following the 18 July 1998 accident, at the time of the 17 July 1998 inspection it was noted that one of the cables supporting theficus tree was "a bit looser than normal." Ms. Wall's staff did not record any information concerning the looseness of the cable to place Ms. Wall or other staff members on notice. The staff member's failure to record his findings that one of the cables was "a bit looser than normal" constituted a negligent act because the cables were installed to help the tree remain upright and to monitor any shifting or movement of the tree.
Any movement of the tree would have been significant enough to record due to the potential for harm to visitors at the zoo from a falling tree. Since Ms. Wall's staff failed to record that a cable was looser than normal, nothing was done immediately regarding the loose cable. Defendant testified that nothing was done because the tree was scheduled for its semi-annual pruning and maintenance the following Monday, 20 July 1998; however, since Ms. Wall did not know about the loose cable until after the tree fell, she had no opportunity to determine whether safety precautions should be taken due to the loose cable. When theficus tree fell on 18 July 1998, it was found that two of the cables had snapped. On 18 July 1998, the ficus tree had grown to approximately 34 feet tall and had a larger and heavier trunk and a larger and heavier foliage canopy than it had when it fell down the first time.
Defendant's personnel under Ms. Wall's supervision negligently breached the duty owed to plaintiff in that: (1) they were aware that the ficus tree that fell causing plaintiff's injuries had fallen in the past; (2) they were aware that one of the cables supporting the tree was loose, indicating that the tree had moved; (3) they were aware that the canopy of foliage had reached the point where the tree was so "top-heavy" that it was given a number one priority for pruning; (4) they were aware that because the base of the planter housing the tree was concrete, the roots of the tree were limited in their ability to support the height of the tree and the weight of the canopy; and (5) they were aware of the likely harm to visitors at the zoo if the tree fell during the *Page 13 
hours of operation. In spite of defendant's awareness of the condition of the tree, the warning signs indicating an increased danger of falling, defendant sprayed the canopy of foliage on the tree with water on the morning of 18 July 1998, further adding to the weight of the canopy. The immediate danger imposed by the top heavy ficus tree was known or discoverable by defendant, and by allowing plaintiff and other patrons to enter the African Pavilion where the tree was located without taking adequate steps to ensure their safety, defendant breached its duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors.
In order for a claimant to recover under the Act, it must be shown that the negligence of an employee of a State agency was a proximate cause of the injuries sustained by the claimant. Register v.Administrative Office of the Courts, 70 N.C. App. 763, 321 S.E.2d 24
(1984). Plaintiff has met her burden in this case, and has adequately demonstrated that the negligence of Ms. Wall and/or her staff was a proximate cause of plaintiff's injuries. For this reason, I vote to affirm the Decision and Order of the Deputy Commissioner and pay damages to plaintiff.
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1